628 S.E.2d 74

Alan LUGINBYHL, s/k/a Alan Kurt Luginbyhl

v.

COMMONWEALTH of Virginia.

Record No. 1333–04–4.

Court of Appeals of Virginia,
Richmond.

April 4, 2006.

Michael F. Devine (Devine & Connell, P.L.C., on briefs), for appellant.

Stephen R. McCullough, Assistant Attorney General (Judith Williams Jagdmann, Attorney General, on brief), for appellee.

Present: FELTON,* C.J., and BENTON, ELDER, FRANK, HUMPHREYS, CLEMENTS, KELSEY, McCLANAHAN, HALEY, JJ., and FITZPATRICK, Ret. J.**

## UPON REHEARING EN BANC

HALEY, Judge.

### I.

### PROCEDURAL HISTORY

This matter comes before the Court from a divided panel decision rendered on August 30, 2005, and reported as *Luginbyhl v. Commonwealth,* 46 Va.App. 460, 618 S.E.2d 347 (2005). The trial court convicted appellant of drunk driving in violation of Code § 18.2-266. The question presented by appellant to the panel read as follows:

Is the certificate of breath analysis produced specifically for use at trial to prove the guilt of the accused testimonial evidence and thus constitutionally inadmissible when the analyst is not unavailable and there had not been a prior opportunity for cross-examination by the accused?

The panel affirmed the trial court's refusal to suppress (1) a written breath test analysis result and (2) an accompanying certificate which verified both the operability of the testing

---

* When the case was argued, Judge Fitzpatrick presided. Judge Felton was elected Chief Judge effective April 1, 2006.

** Judge Fitzpatrick participated in the hearing and decision of this case prior to the effective date of her retirement on March 31, 2006.

machine and the validity of the machine operator's license. The panel held that neither was "testimonial" evidence proscribed by the Confrontation Clause of the United States Constitution as addressed in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

By order dated September 12, 2005, we granted appellant's petition for rehearing *en banc*, stayed the mandate of that decision, and reinstated the appeal.[1]

Upon rehearing *en banc*, we affirm appellant's conviction on grounds more narrow than, and independent of, the panel decision.

## II.

### FACTS

Pursuant to Rule 5A:8(c), the parties presented an agreed statement of facts, in lieu of a transcript, of the trial court proceedings. The following summary of the evidence contains quotations from that statement.

On November 25, 2003, Officer Darren Day was on patrol on Richmond Highway in Fairfax County.

[H]e observed the three cars in front of him brake abruptly, in order to avoid an accident. Officer Day noticed a white station wagon had pulled onto Richmond Highway from a parking lot and was perpendicular to the lanes of travel. That vehicle remained in the road a few seconds and then made a slow right turn. The station wagon was weaving, and at one point missed hitting the curb by approximately two inches. The vehicle made a slow left turn into a shopping center, causing the vehicles approaching it to brake to avoid a collision. Those vehicles flashed their lights and honked their horns.

Officer Day effected a traffic stop and identified the driver as the appellant.

Officer Day detected a strong odor of alcoholic beverage about the defendant. The defendant's eyes appeared glassy

---

1. 46 Va.App. 545, 620 S.E.2d 125 (2005).

and bloodshot. Mr. Luginbyhl's face was red, and he exhibited sluggish motor skills. When asked how much he had to drink, Mr. Luginbyhl responded, "I had a lot." He indicated that he had had approximately six to eight vodka drinks. The defendant began to fall forward as he stepped from his vehicle, so Officer Day put his hand on defendant's chest to steady him. The officer directed Mr. Luginbyhl to lean against the car for support. The defendant stated that he had consumed "6, 7 or 8 vodka drinks" which were of the size of a 12-ounce cup inside the vehicle. The defendant was cooperative in performing field sobriety tests. In performing the finger-to-nose test, the defendant attempted to touch his nose four times. He succeeded one time, and touched his cheek and forehead on other attempts. Which attempting to perform a one-legged stand test, the defendant stopped, began to cry, and stated: "I'm drunk; I'm an alcoholic."

Officer Day conducted a preliminary breath test at the scene. Subsequently, Mr. Luginbyhl agreed to take a breath analysis at the police station. Officer Caine, who was not present at trial, performed that analysis while Officer Day observed.

The analysis showed a blood alcohol concentration of 0.24%. Officer Caine executed the accompanying certificate. The certificate read:

ATTEST:

I CERTIFY THAT THE ABOVE IS AN ACCURATE RECORD OF THE TEST CONDUCTED; THAT THE TEST WAS CONDUCTED WITH THE TYPE OF EQUIPMENT AND IN ACCORDANCE WITH THE METHODS APPROVED BY THE DEPARTMENT OF CRIMINAL JUSTICE SERVICES, DIVISION OF FORENSIC SCIENCE; THAT THE TEST WAS CONDUCTED IN ACCORDANCE WITH THE DIVISION'S SPECIFICATIONS; THAT THE EQUIPMENT ON WHICH THE BREATH TEST WAS CONDUCTED HAS BEEN TESTED WITHIN THE PAST SIX MONTHS

AND FOUND TO BE ACCURATE; THAT PRIOR TO ADMINISTRATION OF THE TEST THE ACCUSED WAS ADVISED OF HIS RIGHT TO OBSERVE THE PROCESS AND SEE THE BLOOD ALCOHOL READING ON THE EQUIPMENT USED TO PERFORM THE BREATH TEST, AND THAT I POSSESS A VALID LICENSE TO CONDUCT SUCH TEST, GIVEN UNDER MY HAND THIS 25TH DAY OF NOVEMBER, 2003.

 Over objection, the trial court admitted the analysis and certificate pursuant to Code § 18.2–268.9.[2] The trial court convicted appellant of driving while intoxicated in violation of Code § 18.2–266 and sentenced him to 180 days in jail and a fine of $350. The entire fine and 170 of the days of the jail sentence were suspended.[3]

## III.

## DECISIONAL BASIS

Appellant maintains we should substantively address the *Crawford* issue decided in the panel opinion. We decline to do so.

---

2. Code § 18.2–268.9 states in relevant part: "This certificate, when attested by the individual conducting the breath test, shall be admissible in any court in any criminal ... proceeding as evidence of the facts therein stated and of the results of such analysis."

3. At oral argument appellant maintained for the first time that the breath test analysis of 0.24% may have caused the trial court to enhance appellant's punishment to an effective jail sentence of 10 days. On the day of the offense, November 25, 2003, the penalty provisions of Code § 18.2–270, as applicable to Code § 18.2–266, provided for a mandatory minimum incarceration of 5 days.

That issue was not presented to the trial court and, accordingly, was not preserved for appeal as required by Rule 5A:18. Also, appellant does not ask this Court to invoke the ends of justice exception to Rule 5A:18, and "[t]his Court will not consider, *sua sponte*, an ends-of-justice argument under Rule 5A:18." *Widdifield v. Commonwealth*, 43 Va.App. 559, 564, 600 S.E.2d 159, 162 (2004) (en banc). Moreover, even if the appellant had preserved this issue below, it was not a question presented in the petition for appeal as required by Rule 5A:12(c), nor was the issue briefed as required by Rule 5A:20. Accordingly, the issue is defaulted, and we do not consider it. *See Gregory v. Commonwealth*, 46 Va.App. 683, 694, 621 S.E.2d 162, 168 (2005).

■ "It is a well recognized principle of appellate review that constitutional questions should not be decided if the record permits final disposition of a cause on non-constitutional grounds." *Keller v. Denny*, 232 Va. 512, 516, 352 S.E.2d 327, 329 (1987). *See also Volkswagen of America v. Smit*, 266 Va. 444, 454, 587 S.E.2d 526, 532 (2003) ("[A] court will not rule upon the constitutionality of a statute unless such a determination is absolutely necessary to decide the merits of the case."). A congruent principle is one that an appellate court decides cases "on the best and narrowest ground available." *Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 531, 111 S.Ct. 913, 922, 112 L.Ed.2d 1125 (1991) (Stevens, J., concurring).

■ Coupled with these principles of judicial prudence is the proposition that an appellate court may structure a decision upon an "assuming but not deciding" basis. Such a basis does not foreclose a future review of a constitutional issue and, moreover, does not bind those—here, potentially the Commonwealth—subject to the court's jurisdiction to the effect of a decision. Finally, the "assuming but not deciding" basis is useful for a "harmless error" analysis.

Thus, and as specifically applicable to the instant case, the Court in *United States v. McClain*, 377 F.3d 219, 222 (2d Cir.2004), held:

It is well established that violations of the Confrontation Clause, if preserved for appellate review, are subject to harmless error review, however, and *Crawford* does not suggest otherwise. *See, e.g., Coy v. Iowa*, 487 U.S. 1012, 1021, 108 S.Ct. 2798, [2803,] 101 L.Ed.2d 857 (1988) (holding that denial of face-to-face confrontation is subject to harmless error review); *United States v. Tropeano*, 252 F.3d 653, 659 (2d Cir.2001) ("[H]armless error analysis applies to evidentiary errors and to violations of the Confrontation Clause.").

*See Crawford*, 541 U.S. at 76, 124 S.Ct. at 1378 (Rehnquist, C.J., concurring in the judgment) (noting that the *Crawford* majority "implicit[ly] recogniti[zed] that the mistaken applica-

tion of its new rule by courts which guess wrong as to the scope of the rule is subject to harmless-error analysis"); *United States v. Williams*, 429 F.3d 767, 774 (8th Cir.2005) (assuming "that a Confrontation Clause error occurred," but holding "that the error in admitting [the hearsay] statement was harmless beyond a reasonable doubt," reasoning that "[t]he independent evidence . . . was so overwhelming" that the defendant's "conviction cannot be attributed to [the inadmissible] statement" (internal quotations omitted)); *see also Pitt v. Commonwealth*, 260 Va. 692, 696, 539 S.E.2d 77, 79 (2000) (assuming that the trial court's decision to admit the hearsay statement of a co-conspirator violated the defendant's Sixth Amendment rights, but then holding that the error was harmless beyond a reasonable doubt because "the evidence as a whole, excluding [the hearsay] statement, overwhelmingly proved that [the defendant] is guilty," and, therefore, "there was no reasonable possibility that [the] statement might have contributed to [the defendant's] conviction"); *Dearing v. Commonwealth*, 260 Va. 671, 674, 536 S.E.2d 903, 904 (2000) (holding that, although the trial court violated the defendant's Sixth Amendment rights by admitting the hearsay statement of a co-conspirator, that error was harmless beyond a reasonable doubt).

Therefore, we assume without deciding that (1) the breath analysis result and (2) the accompanying certificate were "testimonial" and their introduction in evidence, despite Code § 18.2–268.9, was constitutional error under *Crawford.* Our decision thus relies upon the applicable "harmless error" standard of review alone.

## IV.

## ANALYSIS

In *Corado v. Commonwealth*, 47 Va.App. 315, 623 S.E.2d 452 (2005), we addressed the standard of review for harmless constitutional error.

We begin our analysis by reiterating the heightened standard under which we review constitutional error for harm-

lessness. "When a trial court admits evidence in violation of the United States Constitution, the court's error is a constitutional one." "Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." "We decide whether the erroneous admission of evidence was sufficiently prejudicial to require reversal on the basis of our own reading of the record and on what seems to us to have been the probable impact on the fact finder."

*Id.* at 323, 623 S.E.2d at 456 (quoting *Williams v. Commonwealth*, 30 Va.App. 378, 383, 517 S.E.2d 246, 249 (1999) (additional citations omitted)). *See also Clay v. Commonwealth*, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001) ("When a federal constitutional error is involved, a reviewing court must reverse the judgment unless it determines that the error is harmless beyond a reasonable doubt." (citations omitted)).

In pertinent part, Code § 18.2–266 makes it "unlawful for any person to drive . . . a motor vehicle . . . while such person is under the influence of alcohol." The agreed statement of facts recites that "the driver of the vehicle was identified as the defendant" and that the defendant told Officer Day, "I'm drunk." This confession is corroborated, again quoting from the agreed statement of facts, because appellant "had a strong odor of alcohol," "glassy and bloodshot" eyes, and a "red face"; "exhibited sluggish motor skills"; and "fell forward as he stepped from his vehicle." Appellant told Officer Day he had "a lot to drink" and defined "a lot" as "6, 7 or 8 vodka drinks" the size of a 12–ounce cup in his vehicle. Appellant "attempted to touch his nose four times . . . [but only] . . . succeeded one time." While failing a one-legged stand test, the appellant began to cry and told Officer Day, "I'm an alcoholic." This evidence, without the breath analysis, proves guilt beyond a reasonable doubt.

Upon this record, assuming but not deciding that the trial court committed constitutional error by admitting the breath test analysis and its accompanying certificate, we conclude the error was harmless beyond a reasonable doubt.

Thus, appellant's conviction is affirmed.

*Affirmed.*

BENTON, J., dissenting.

For the reasons I gave in *Luginbyhl v. Commonwealth,* 46 Va.App. 460, 478–85, 618 S.E.2d 347, 357–60 (2005) (Benton, J., dissenting), I would hold that admission of the evidence violated Alan Luginbyhl's rights as protected by the Confrontation Clause and, further, that the error was not harmless.

## I.

This appeal challenges the admissibility of a certificate of breath analysis containing the attestation of a government employee who did not testify at trial. Luginbyhl contends that by admitting the certificate into evidence, the trial judge violated his Sixth Amendment right of confrontation.

The certificate of analysis, which the trial judge admitted in evidence over a hearsay objection, is signed by a "breath test operator" under the following attestation:

I CERTIFY THAT THE ABOVE IS AN ACCURATE RECORD OF THE TEST CONDUCTED; THAT THE TEST WAS CONDUCTED WITH THE TYPE OF EQUIPMENT AND IN ACCORDANCE WITH THE METHODS APPROVED BY THE DEPARTMENT OF CRIMINAL JUSTICE SERVICES, DIVISION OF FORENSIC SCIENCE; THAT THE TEST WAS CONDUCTED IN ACCORDANCE WITH THE DIVISION'S SPECIFICATIONS; THAT THE EQUIPMENT ON WHICH THE BREATH TEST WAS CONDUCTED HAS BEEN TESTED WITHIN THE PAST SIX MONTHS AND FOUND TO BE ACCURATE; THAT PRIOR TO ADMINISTRATION OF THE TEST THE ACCUSED WAS ADVISED OF HIS RIGHT TO OBSERVE THE PROCESS AND SEE THE BLOOD ALCOHOL READING ON THE EQUIPMENT USED TO PERFORM THE BREATH TEST, AND THAT I POSSESS A VALID LI-

CENSE TO CONDUCT SUCH TEST, GIVEN UNDER MY HAND THIS 25TH DAY OF NOVEMBER, 2003.

These assertions were made to satisfy Code § 18.2–268.9. The record establishes, however, that Luginbyhl did not have the opportunity to cross-examine the breath test operator to test the veracity of his statements. Without dispute, the operator's attestation statements constitute hearsay. The issue in this case is whether that hearsay was testimonial and thus barred by the Sixth Amendment.

The Sixth Amendment of the Constitution of the United States provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), recently interpreted the requirements of the Sixth Amendment by reviewing its text and the historical record.

Examining the historical background of the Sixth Amendment's Confrontation Clause, the Court held that "history supports two inferences about the meaning of the Sixth Amendment." 541 U.S. at 50, 124 S.Ct. at 1363. The Court identified those inferences as follows:

> First, the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused.... The Sixth Amendment must be interpreted with this focus in mind.

*　　*　　*　　*　　*　　*

The historical record also supports a second proposition: that the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination. The text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts.

*Id.* at 50, 53–54, 124 S.Ct. at 1363, 1365. In view of this historical analysis, the Supreme Court overruled the reliability test set forth in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), because of "its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude." *Crawford,* 541 U.S. at 63, 124 S.Ct. at 1371. The previously accepted reliability test allowed hearsay evidence to be admitted as long as it had "adequate 'indicia of reliability' " and the witness was unavailable. *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. As the Court explained in *Crawford:* "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." 541 U.S. at 68–69, 124 S.Ct. at 1374. Thus, the Sixth Amendment gives a criminal defendant the right to confront testimonial evidence. *Id.*

In plain terms, *Crawford* describes a "core class of 'testimonial' statements" as including "affidavits," any "similar pretrial statements that declarants would reasonably expect to be used prosecutorially," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51–52, 124 S.Ct. at 1364. When governmental agents are involved, this concern is heightened. As the *Crawford* Court noted, the "[i]nvolvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse—a fact borne out time and again throughout a history with which the Framers were keenly familiar." 541 U.S. at 56 n. 7, 124 S.Ct. at 1367.

The operator conducted the breath analysis and prepared the attestation solely to provide evidence in court to prove the facts necessary to convict Luginbyhl. This cannot be fairly disputed. Indeed, the attestation statement asserts the existence of seven facts or circumstances said to be true by the "breath test operator." Simply put, the certificate of blood analysis that was admitted in evidence in this case is testimo-

nial under the narrowest of the *Crawford* definitions and, thus, falls squarely within the *Crawford* bar.

Luginbyhl accurately asserts that the "certificate . . . was a formalized, *ex parte* statement made by a government agent for the sole purpose of being used prosecutorially in court in lieu of his live testimony." It seems to me that the use of this type of statement was the paradigmatic violation the Supreme Court emphasized in *Crawford.* As the Court discussed in its historical analysis, the judges at a treason trial against Sir Walter Raleigh permitted the prosecution to read to a jury an affidavit or letter from an alleged co-conspirator, Cobham, in "[t]he most notorious instance of civil-law examination" in a criminal trial. 541 U.S. at 44, 124 S.Ct. at 1360. This was an abuse the Confrontation Clause was enacted to end.

> The Raleigh trial itself involved the very sorts of reliability determinations that *Roberts* authorizes. In the face of Raleigh's repeated demands for confrontation, the prosecution responded with many of the arguments a court applying *Roberts* might invoke today: that Cobham's statements were self-inculpatory, that they were not made in the heat of passion, and that they were not "extracted from [him] upon any hopes or promise of Pardon." It is not plausible that the Framers' only objection to the trial was that Raleigh's judges did not properly weigh these factors before sentencing him to death. Rather, the problem was that the judges refused to allow Raleigh to confront Cobham in court, where he could cross-examine him and try to expose his accusation as a lie.

*Id.* at 62, 124 S.Ct. at 1370–71 (citations omitted). The Supreme Court observed that despite Raleigh's freedom to confront in court those who read Cobham's letter, this was an insufficient protection of a right to confrontation because "[l]eaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices." *Id.* at 51, 124 S.Ct. at 1364. In other words, to protect the right of confrontation, Cobham's letter would be inadmissible under the Sixth Amendment because the Confrontation Clause "re-

flects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined." *Id.* at 61, 124 S.Ct. at 1370.

The Commonwealth suggests that the certificate is not "testimonial" because *Crawford* limits the definition of "testimonial" statements to "(1) 'prior testimony at preliminary hearings, before a grand jury, or at a former trial,' and (2) statements garnered from witnesses during 'police interrogations.'" *Crawford,* however, expressly includes other formulations of "testimonial" statements, such as "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, . . . [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." 541 U.S. at 51–52, 124 S.Ct. at 1364 (citations omitted). As the Court noted, "[t]hese formulations all share a common nucleus" because they are statements reasonably expected to be used at trial. *See id.* at 52, 124 S.Ct. at 1364. The Court did not just focus on the "form" of the evil but, rather, upon the substance: depriving a defendant of the opportunity to meaningfully confront the state's evidence.

The certificate of analysis does not evade the definition of hearsay by reporting statements generated by a machine. It clearly comprises information supplied by a person and an attestation by a person of facts. Indeed, even a cursory review of the seven facts the operator certifies demonstrates they are not mere statements generated by a machine. For example, the operator attests "that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test."

Assertions that the breath test operator was not an "accuser" and that this evidence is somehow "neutral" presupposes that cross-examination of the blood test operator could not serve any valid purpose, when, in fact, there were a number of

effective means to cross-examine the operator concerning each of the attestations in the certificate. The certificate proclaimed that the equipment, the record it generated, the breath test, and the operator of the equipment all yielded a result that conformed to statutory requirements and that incriminated Luginbyhl. Without cross-examination, the certificate had the effect of reinforcing the Commonwealth's theory of prosecution. The "crucible of cross-examination" could have exposed any weaknesses in the operator's qualifications, his perception, the state of the equipment, or the test protocol.

The Commonwealth's characterizations of the operator's statements as "neutral" and "non-accusatory" also suggest a type of safeguard that is intended to render the statements more reliable or trustworthy as evidence. Nothing in *Crawford* declares that the hearsay statement must accuse Luginbyhl of wrongdoing to be testimonial or that statements which appear neutral in character are nontestimonial. Indeed, nothing within the meaning of "testimonial" equates with "accusatory." Furthermore, it is a dubious conclusion that evidence created for use by the prosecutor at trial could ever be "neutral" in the context of the adversarial system in a criminal proceeding. "The Framers would be astounded to learn that *ex parte* testimony could be admitted against a criminal defendant because it was elicited by 'neutral' government officers." *Crawford*, 541 U.S. at 66, 124 S.Ct. at 1373.

Giving a trial judge the discretion to determine whether a statement is "accusatory" or "neutral" smacks of the "open ended balancing" reliability analysis the Court rejected in *Crawford*: "The *Roberts* test allows a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability ... [and] replaces the constitutionally prescribed method of assessing reliability with a wholly foreign one." *Id.* at 62, 124 S.Ct. at 1370. The Supreme Court warned that these were the very kinds of "vague" and "manipulable" standards the Framers "were loath to leave ... in judicial hands." *Id.* at 67, 124 S.Ct. at 1373. Thus, the Court rejected the general concept of "replacing categorical

constitutional guarantees with open-ended balancing tests" and held that those tests "do violence to [the Framers'] design." *Id.* at 67–68, 124 S.Ct. at 1373. According to the Supreme Court, the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 61, 124 S.Ct. at 1370. Thus, the Supreme Court explicitly and "once again reject[ed] the view that the Confrontation Clause applies of its own force only to in-court testimony, and that its application to out-of-court statements introduced at trial depends upon 'the law of Evidence for the time being.'" *Id.* at 50–51, 124 S.Ct. at 1364 (citation omitted). These rulings perforce reject injecting a manipulable evidentiary standard to avoid the constitutional command of *Crawford* under the guise of characterizing the evidence as "neutral" or "not accusatory."

Simply put, "[a]dmitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation." *Id.* at 61, 124 S.Ct. at 1370. Whether the evidence is accusatory or neutral, it does "bear testimony." *Id.* at 51, 124 S.Ct. at 1364. It was prepared for use at trial by a government agent; it was a substitute for an actual witness; it was admitted in evidence without the opportunity of cross-examination. The relevant factors under *Crawford* are that the evidence in the certificate was generated to discover and report evidence against Luginbyhl, the accused, and was later used at trial for that purpose without the opportunity of cross-examination.

The Commonwealth cites several appellate courts that have ruled affidavits to be nontestimonial. Other appellate courts, however, addressing this precise issue, have ruled that similar affidavits are testimonial and barred by *Crawford*. *See, e.g., Shiver v. State*, 900 So.2d 615, 618 (Fla.App.2005) (holding that a breath test affidavit "contained statements one would reasonably expect to be used prosecutorially, . . . was made under circumstances which would lead an objective witness to reasonably believe the statements would be available for trial," and was testimonial); *City of Las Vegas v. Walsh*, 120 Nev.

392, 91 P.3d 591, 595 (2004) (holding that an affidavit "offered to prove certain facts concerning use of certain devices ... related to determining presence of alcohol" is one prepared for use at trial and is testimonial); *People v. Rogers,* 8 A.D.3d 888, 780 N.Y.S.2d 393, 397 (2004) (holding that a blood test report "generated by the desire to discover evidence against defendant" was testimonial).

In any event, to decide this case, we need not go beyond the text of *Crawford.* Plainly understood, the language in *Crawford* leads to the conclusion that this certificate of analysis is testimonial just as "affidavits ... the defendant was unable to cross-examine." 541 U.S. at 51, 124 S.Ct. at 1364. As the Supreme Court noted, "[w]here testimonial statements are involved, we do not ... leave the Sixth Amendment's protection to the vagaries of the rules of evidence." *Id.* at 61, 124 S.Ct. at 1370. In other words, "[d]ispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." *Id.* at 62, 124 S.Ct. at 1371.

## II.

Without addressing the substantive issue on appeal, the majority concludes that any alleged error in admitting the certificate was harmless. The majority bases this on Luginbyhl's statement to the officer that he was "drunk" and an alcoholic and on the officer's observations of his demeanor and conduct. I would hold, however, that the record fails to demonstrate that the trial judge's decision was not affected by the statutory presumption of intoxication triggered by the certificate of analysis. *See* Code § 18.2–269(A)(3).

We succinctly addressed in *Williams v. Commonwealth,* 32 Va.App. 395, 528 S.E.2d 166 (2000), the contours of the analysis required when a Confrontation Clause error occurs.

Constitutional error is harmless ... only if "the beneficiary of the constitutional error ... proves beyond a reasonable doubt that the error complained of did not contribute to the

verdict obtained." *Chapman v. California,* 386 U.S. 18, 24[, 87 S.Ct. 824, 828, 17 L.Ed.2d 705] (1967). "The test, therefore, is not whether laying aside the erroneously admitted evidence there was other evidence sufficient to convict beyond a reasonable doubt ..., but, more stringently, 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Thompson v. Leeke,* 756 F.2d 314, 316 (4th Cir.1985) (citation omitted). In other words, even if "the other evidence amply supports the ... verdicts, [error is not harmless when] the disputed testimony may well have affected the ... decision." *Cartera v. Commonwealth,* 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978).

An "emphasis and perhaps overemphasis, upon the [concept] of 'overwhelming evidence' " has the effect of clouding the relevant question " 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Chapman,* 386 U.S. at 23[, 87 S.Ct. at 827] (footnote and citations omitted). As the Supreme Court has stated, "the correct inquiry is whether, assuming that the damaging potential of the [evidence] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *[Delaware v.] Van Arsdall,* 475 U.S. [673,] 684[, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986) ]; *see also Olden v. Kentucky,* 488 U.S. 227, 232[, 109 S.Ct. 480, 483, 102 L.Ed.2d 513] (1988). Thus, "a harmless error analysis ... [is not] simply a sufficiency of the evidence analysis." *Hooker v. Commonwealth,* 14 Va.App. 454, 458, 418 S.E.2d 343, 345 (1992).

*Williams,* 32 Va.App. at 399–400, 528 S.E.2d at 168–69 (alterations in original).

When the trial judge admitted the certificate of analysis, its statement that Luginbyhl's blood alcohol level reached .24% triggered the statutory presumption of intoxication. Code § 18.2–269(A)(3) provides that if a chemical analysis of the accused's blood shows that the blood alcohol level was .08% or more, "it shall be presumed that the accused was under the influence of alcohol." It is reasonably possible that the judge

attached significant weight to the incriminating evidence in the certificate in spite of strong independent evidence of Luginbyhl's intoxication. *See Thomas v. Town of Marion,* 226 Va. 251, 254, 308 S.E.2d 120, 122 (1983); *Castillo v. Commonwealth,* 21 Va.App. 482, 487–91, 465 S.E.2d 146, 148–50 (1995).

Indeed, in *Thomas,* where the trial judge erred in admitting into evidence a certificate of analysis showing the accused had a blood alcohol content of .17% by weight by volume, the evidence proved the accused was unsteady on his feet, "had a strong odor of alcohol about his person, his speech was slurred, and his face was flushed," and, further, the accused "admitted consuming two beers and a shot of whiskey." 226 Va. at 253, 308 S.E.2d at 121. Nonetheless, the Supreme Court ruled that the non-constitutional error was not harmless because it was "probable" the trier of fact "attached great weight to the incriminating information in the certificate." *Id.* at 254, 308 S.E.2d at 122. This ruling, using the less exacting non-constitutional error standard, *see Clay v. Commonwealth,* 262 Va. 253, 260, 546 S.E.2d 728, 731–32 (2001), *Lavinder v. Commonwealth,* 12 Va.App. 1003, 1005–06, 407 S.E.2d 910, 911 (1991), renders it more than probable in this case that evidence of similar quality was, likewise, not harmless when viewed under the standard required for constitutional error. *See Chapman,* 386 U.S. at 23, 87 S.Ct. at 827 (adopting the standard in *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–31, 11 L.Ed.2d 171 (1963), "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction"); *see also Long v. Commonwealth,* 20 Va.App. 223, 227, 456 S.E.2d 138, 140 (1995) (holding that the Commonwealth failed to meet its burden of proving that the error in severing charges for trial did not affect both the verdict and sentence).

Likewise, *Jenkins v. Commonwealth,* 254 Va. 333, 492 S.E.2d 131 (1997), demonstrates the strictness of the constitutional error standard, which requires the Commonwealth to establish beyond a reasonable doubt that the erroneous admission of the evidence was harmless regarding punishment as

well.[4] In that case, the trial judge allowed a clinical psychologist to testify that based on his ten meetings with a child that "the child 'had been sexually abused.'" *Id.* at 336, 492 S.E.2d at 132. The jury convicted the defendant of aggravated sexual battery, recommending a twenty-year sentence, the maximum under the statute. *Id.* at 335, 492 S.E.2d at 132. Although this Court ruled that the trial judge deprived the defendant of his constitutional right to a jury trial by allowing an expert to testify on the ultimate issue, this Court held the error to be harmless in light of the defendant's confession. *Id.* The Supreme Court disagreed and reversed the conviction. *Id.* at 338, 492 S.E.2d at 133. The Supreme Court held that although the defendant's admission of a single episode of abuse sufficiently supported a finding of guilt, the expert testimony "was prejudicial for purposes of fixing the quantum of punishment imposed" because the expert testimony alluded to repeated abuse. *Id.* The Court could not find that the trial judge's error was harmless beyond a reasonable doubt and

---

4. I disagree with the majority's assertion that Rules 5A:18, 5A:12(c), and 5A:20 preclude consideration of whether the alleged error could have affected Luginbyhl's sentence. *See supra* note 3. Luginbyhl properly objected when the evidence was offered at trial. Luginbyhl had no obligation to ask the trial judge to conduct a harmless error review of the judge's own error when the judge admitted the evidence. *See Hackney v. Commonwealth,* 28 Va.App. 288, 295–96, 504 S.E.2d 385, 389 (1998) (holding that a trial judge may not consider the possible harm of an error as a basis of an initial decision to admit improper evidence).

The harmless error inquiry is the process by which a reviewing court identifies trial error and then determines whether that error affected the judgment. *See Sochor v. Florida,* 504 U.S. 527, 539–40, 112 S.Ct. 2114, 2122–23, 119 L.Ed.2d 326 (1992); *Pope v. Illinois,* 481 U.S. 497, 504, 107 S.Ct. 1918, 1923, 95 L.Ed.2d 439 (1987). This is so because the purpose of the harmless error rule "is 'to conserve judicial resources by enabling appellate courts to cleanse the judicial process of prejudicial error without becoming mired in harmless error.'" *United States v. Hasting,* 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983) (citation omitted). Furthermore, the principle is well established that the Commonwealth bears the burden of proving the error was harmless. *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828; *see also Joyner v. Commonwealth,* 192 Va. 471, 476–78, 65 S.E.2d 555, 558–59 (1951). Thus, although Luginbyhl is obligated to raise the alleged error on appeal, he is not obligated to raise the harmless error doctrine.

remanded the case for a new trial. *Id.* at 338, 492 S.E.2d at 133–34.

Significantly, the psychologist did not directly testify in *Jenkins* that the abuse was ongoing or otherwise particularly severe. Yet, the possibilities that the trier of fact inferred the severity of the abuse from the inappropriate testimony and that the verdict could have been affected by that inference were enough to keep the error from being harmless. The error in Luginbyhl's case is more harmful than the error in *Jenkins* because Code § 18.2–269(A)(3) essentially required that the trial judge consider the certificate of analysis as presumptive of guilt. In view of this statutory presumption of guilt, this record in this case does more than merely raise the possibility that the fact finder was swayed by a possible inference drawn from the improperly admitted evidence.

I believe we cannot reasonably conclude from the circumstances of this case that the government has met its burden of proving beyond a reasonable doubt that the error could not have affected the verdict or the sentence. For these reasons, I would hold that the admission of the document violated Luginbyhl's rights as protected by the Confrontation Clause and that a reasonable possibility exists that the error did affect the verdict and the sentence.